UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| VICTOR SONSINO, | ) | Case No. 21-54258-lrc |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| EDGEFIELD HOLDINGS, LLC | ) | Adversary Proceeding Number: |
| | ) | |
| | ) | _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VICTOR SONSINO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMPLAINT TO DETERMINE WHETHER DEBTOR IS ENTITLED TO A DISCHARGE
AND DISCHARGEABILITY OF DEBTS

COMES NOW Edgefield Holdings, LLC ("Edgefield" or "Plaintiff") and for its Complaint to Determine Whether Debtor is Entitled to a Discharge and Dischargeability of Debts ("Complaint") against Victor Sonsino ("Debtor" or "Defendant"), shows the Court the following:

JURISDICTION AND VENUE

1.      This Adversary Proceeding is being brought in connection with Debtor's case under Chapter 7 of Title 11, Case Number 16-64555 now pending in this Court.  This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157, 1334 and 11 U.S.C. §§ 727 and 523 et seq.

2.      This Adversary Proceeding constitutes a core proceeding as that term is defined under 28 U.S.C. § 157(b)(2)(I).

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

PARTIES

4.    Edgefield Holdings, LLC, a limited liability company organized under the laws of the State of Delaware and domesticated in Georgia, is a creditor of Debtor pursuant to the below-described guaranty and related instruments.

5.    Defendant is an individual who may be served with process at his residence at 1465 Wembley Ct NE, Atlanta, Georgia 30329.  Debtor is subject to the jurisdiction and venue of this court.

FACTUAL BACKGROUND

I.    *The Indebtedness*

6.    On November 22, 2011, Regions Bank received a judgment against, inter alia, the Debtor in that certain case styled as Regions Bank v. Victor Sonsino, et al., Superior Court of Fulton County, Case No. 2011CV197383 ("Judgment Case") in the original principal amount of $375,092.44, plus attorney fees of $55,128.18 ("Judgment").

7.    Regions recorded a Writ of Fieri Facias for the Judgment on December 5, 2011 at Lien Book 2195, Page 585, Fulton County records, and renewed the Fi Fa by recording an alias Writ of Fieri Facias on December 4, 2018 for the Judgment at Lien Book 4300, Page 618, pursuant to O.C.G.A. § 9-12-60(a)(1).

8.    The Judgment was assigned to Edgefield pursuant to that certain Assignment of Judgment and Loan Documents dated August 9, 2018, a true and correct copy of which is attached hereto as **Exhibit A**.

9.    On September 4, 2019, Edgefield filed a Motion for Alias Writ of Fieri Facias in the Judgment, seeking to get an original Alias Writ of Fieri Facias in order to, inter alia, record same

on the DeKalb County General Execution Docket. ("Motion for Alias Fi Fa", a true and correct copy of which is attached hereto as **Exhibit B**.)

10.    On November 20, 2019, Plaintiff filed a garnishment against Mario Giron, seeking to collect amounts that Mario Giron owed to the Debtor ("Giron Garnishment"). A true and correct copy of the Giron Garnishment is attached hereto as **Exhibit C**.

11.    Edgefield has received no payments from Debtor on the Judgment.

II.    *The Properties*

a.    ***The Memorial Property***

13.    Debtor was the owner of a certain property located at 2451 Memorial Drive, Atlanta, Georgia 30317, pursuant to that certain Quitlciam Deed from S&A Holdings, Inc. recorded on June 13, 2012 at Deed Book 23084, Page 684, DeKalb County records ("Memorial Property").

14.    The Memorial Property is a vacant commercial lot.

15.    On September 19, 2019, the Debtor transferred the Memorial Property to his brother-in-law, Zion Tashkent ("Tashkent") via that certain Quitclaim Deed recorded at Deed Book 27972, Page 55, DeKalb County records ("Memorial QCD"), a true and correct copy of which is attached hereto as **Exhibit D**.

16.    While the Memorial QCD states that the Debtor received $50,000.00 in exchange for his transfer of the Memorial Property to Tashkent, the Debtor admitted at his 2004 Examination that he did not receive any consideration from Tashkent in exchange for the Memorial QCD, and instead claimed that he had an unwritten agreement in which Tashkent would pay him the $50,000.00 in the future at some unspecified time.

17.    The Debtor does not list any debt owed to him by Tashkent on his Schedules, nor did the Debtor disclose the Memorial QCD in his Schedules.

18.    The Memorial QCD was executed at a time when the Debtor knew that Edgefield had filed the Motion for Alias Fi Fa in an attempt to record its lien against the Memorial Property, and that Edgefield was attempting to collect the Judgment by filing the Giron Garnishment..

22.    The Memorial QCD was made with the actual intent to hinder, delay and defraud Plaintiff in that Debtor transferred the Memorial Property with the intent of preventing Plaintiff from obtaining collection on Plaintiff's claims.

23.    The Debtor has retained a continual concealed interest in the Memorial Property as he has continued to manage same.

### b.    *The Rogers Street Property*

24.    Debtor owned one half of that certain real property located at 1108 Rogers Street, Clarkston, GA 30021 ("Rogers Street Property")(collectively, the Memorial Property and Rogers Street Property are referred to herein as the "Properties") pursuant to that certain Quitclaim Deed from DHO, Inc. to Debtor and Ronnie Antebi recorded at Deed Book 27649, Page 366, DeKalb County records.

25.    On April 21, 2021, less than a month and a half prior to the Debtor filing bankruptcy, Debtor transferred his one half interest in the Rogers Street Property via a Quitclaim Deed to Atlanta Legacy Holdings, LLC, recorded at Deed Book 29312, Page 34, DeKalb County records ("Rogers Transfer")(collectively, the Memorial QCD and the Rogers Transfer are referred to herein as the "Property Transfers"). A true and correct copy of the Rogers Transfer is attached hereto as **Exhibit E**.

26.    Debtor did not receive any consideration from Atlanta Legacy Holdings, LLC in exchange for the Rogers Transfer-instead, he claimed in his 2004 Examination that he transferred

4

his ½ interest in the Rogers Street Property to Atlanta Legacy Holdings, LLC at the request of a friend, Maria Shlomov, who was one of the owners of Atlanta Legacy Holdings, LLC.

27.    The Debtor did not disclose his transfer of his ½ interest in the Rogers Street Property to Atlanta Legacy Holdings, LLC in his Schedules.

28.    The Debtor had the Rogers Street Property transferred to Atlanta Legacy Holdings, LLC at a time when Edgefield was seeking to collect the amount owed on its Judgment from the Debtor.

29.    The Debtor had the Rogers Street Property transferred to Atlanta Legacy Holdings, LLC with the actual intent to hinder, delay and defraud Plaintiff, and to prevent Plaintiff from obtaining collection on Plaintiff's claims.

**Facts Common To All the Property Transfers**

30.    The Property Transfers were made at a time when Debtor was insolvent and/or the Property Transfers rendered Debtor insolvent and unable to pay his debts.

31.    The Property Transfers were made at a time when Debtor knew that collection was imminent, threatened or had commenced.

32.    The Debtor was insolvent at the time of the Property Transfers and/or became insolvent as a result of the Property Transfers.

33.    The Property Transfers show a common fraudulent scheme by Debtor to transfer away Debtor's assets and conceal them from Debtor's creditors.

34.    The Debtor made the Property Transfers with the actual intent to hinder, delay and defraud Plaintiff, and to prevent Plaintiff from obtaining collection on Plaintiff's claims.

35.     Despite the Property Transfers, Debtor maintained a continued concealed interest in the Properties because he paid or funded the expenses of the Properties and maintained possession, control and use of same.

### III.   Giron Garnishment

36.     On June 21, 2013, Mario Giron ("Giron") executed a security deed to Debtor and Ronnie Antebi ("Giron Security Deed") securing a Note in the amount of $195,000.00 ("Giron Note"), which secured a commercial property located at 4036 Lawrenceville Highway, Tucker, GA 30084.

37.     The Note provided for Giron to make 120 monthly payments of $2,686.13 each to Ronnie Antebi and the Debtor ("Note Payments").

38.     The Debtor insisted that Giron make the Note Payments to him in cash or in Western Union money orders.

39.     After Plaintiff filed the Giron Garnishment and the Debtor received notice of same, he offered Giron a discounted payoff of $20,000.00 each to him and Ronnie Antebi to satisfy the Giron Note although over $77,000.00 remained owed on the Note in an effort to prevent Plaintiff from garnishing the Note payments, and Giron accepted same and paid the Debtor and Ronnie Antebi $20,000.00 each to satisfy the Giron Note ("Discounted Giron Payoff").

40.     The Debtor purposely received the Note Payments in cash and Western Union money orders and did not deposit same in banks in order to prevent Plaintiff from garnishing the Debtor's accounts.

41.     In addition, the Debtor negotiated the Discounted Giron Payoff to collect the most possible from Giron while fraudulently thwarting Plaintiff's efforts to garnish the amounts owed on the Giron Note.

42.     Debtor did not disclose receiving the Giron Note Payments or the Discounted Giron Payoff on his Schedules.

**<u>Debtor's Concealment of Income, Destruction of Records And Dissipation of Assets</u>**

43.     In addition, the Debtor has testified that he has operated solely in cash for at least five years, and taken numerous large payments in cash.

44.     The Debtor testified that any checks he received, such as social security payments or other payments in the course of his business affairs, were transferred to the bank account of Tomer Sonsino.

45.     The Debtor has also testified that he did not keep any business records whatsoever, and in fact destroyed all records of his financial affairs.

46.     The Debtor did not receive any consideration from Tomer Sonsino in exchange for his transfer of funds to him.

**<u>Facts Common to All Transfers</u>**

47.     Defendant engaged in a fraudulent transfer scheme to dilute and drain his assets, when collection was imminent, threatened, pending or Judgment had been obtained, to hinder, delay and defraud his creditors.

48.     Defendant had fraudulent intent when making the fraudulent transfers such that he intended to impair or impede Edgefield's ability to collect its debt.

49.     Debtor's fraudulent scheme constitutes actual fraud.

50.     Said transfers rendered Debtor insolvent and unable to pay his debts.

51.     Prior to said Transfers, Debtor held interests and title to the relevant property and assets.

52.     At the time Debtor was transferring assets out of his name, he knew that he did not intend to repay Edgefield and/or did not have the means to repay Edgefield the debt of more than $400,000.00 for which he was obligated to pay.

53.     The transferees did not take said transfers in exchange for reasonably equivalent value, and said transfers were not in the ordinary course of business.

54.     The Transfers constituted all, or substantially all, of Debtor's assets.

55.     Debtor's transferees are insiders or close family members related by blood or marriage or entities controlled and owned by Debtor and/or close family members and knew or had reasonable cause to believe that Debtor was insolvent at the time of said transfers, and that he would be rendered insolvent by the transfers.

56.     By the aforementioned misconduct, Debtor and his transferees conspired to defraud creditors. By the same misconduct, Debtor and his family members received the transfers in bad faith.

57.     Debtor's fraudulent transfers were done with the actual intent to hinder, delay and defraud Plaintiff, and to prevent Plaintiff from obtaining collection on Plaintiff's claims.

58.     Debtor has, without justification, failed to keep and preserve documents from which his financial condition and business transactions might be ascertained.

59.     Debtor has made numerous material misstatements on his Schedules.

***Debtor Not Entitled to a Discharge or to Discharge the Debt Owed to Lender***

60.     It is axiomatic that bankruptcy is for the honest but unfortunate debtor. As has been shown above, the Debtor is neither honest nor unfortunate. On the contrary, Debtor is attempting to use the Bankruptcy Court to achieve dishonest and fraudulent goals.

61.    Debtor owes Edgefield on the Judgment in the amount of $375,092.44 in principal, $20,128.18 in attorney fees and $248,884.11 in post-judgment interest as of July 1, 2022 plus post-judgment interest accruing thereafter at the legal rate. This is a liquidated amount and should be determined non-dischargeable. Alternatively, this Court should deny Debtor's discharge.

COUNT I
ACTION TO DENY DISCHARGEABILITY OF PLAINTIFF'S DEBT PURSUANT TO
11 U.S.C. § 523(a)(2)(A)

62.    Edgefield re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 61 above as if the same were fully set forth herein.

63.    Defendant perpetrated an actual fraud upon Edgefield by engaging in a fraudulent transfer scheme whereby he transferred away his assets so as to render those assets beyond the reach of his creditors, including Edgefield.

64.    Defendant did so with fraudulent intent to hinder, delay or defraud his creditors, including Edgefield.

65.    Defendant concealed and did not disclose the above-described transfers.

66.    Around the time and after the Judgment was entered against him, Defendant engaged in a pattern, practice, and scheme of transferring his assets away from himself so that his personal Guaranty of the Note would be worthless.

67.    Such actions by Defendant made his Guaranty worthless and constitute actual fraud in that, among other things, Defendant hid and concealed changes in his financial condition and the transfer of his assets.

68.    For this reason, the Defendant's debt to Plaintiff should be excepted from debtor's discharge under 11 U.S.C. § 523(a)(2)(A).

69.    By the various actions specified taken on the dates shown above, as well as others, Debtor perpetrated a fraud on Edgefield, by dissipating and transferring the money and assets that could have paid the debt owed to Edgefield to Debtor's closely-held companies and family members.

70.    Debtor's frauds directly and proximately caused injury to Edgefield for which it herein sues.

71.    Edgefield has sustained loss and damage as a result of Defendant's fraudulent scheme, misrepresentations and/or omissions in the amount of $375,092.44 in principal, $20,128.18 in attorney fees and $248,884.11 in post-judgment interest as of July 1, 2022 plus post-judgment interest accruing thereafter at the legal rate, as well as attorneys' fees and other charges or such other amounts to be shown at trial.

72.    Edgefield is entitled to recover punitive and exemplary damages because Defendant's actions show willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to the consequences.

73.    Defendant is hereby notified by Edgefield that Edgefield intends to enforce the provisions of the Note relative to the payment of attorneys' fees. Pursuant to the provisions of the Loan Documents and O.C.G.A. § 13-1-11, Defendant has ten (10) days from the date of service of this Complaint upon him within which to pay the sums due under the Note without also being liable for attorneys' fees. Edgefield is entitled to judgment against Defendant for statutory attorneys' fees pursuant to the Loan Documents and O.C.G.A. § 13-1-11.

74.    Defendant has acted in bad faith, been stubbornly litigious, or has caused Edgefield unnecessary trouble and expense. Accordingly, Edgefield is entitled to recover against Defendant

all costs and expenses of litigation, including reasonable attorneys' fees pursuant to O.C.G.A. § 13-6-11.

75.     Edgefield is entitled to exemplary and punitive damages.

76.     Debtor has engaged in a persistent and continuing scheme of common law fraud under which he transfers assets to which he has an interest to E. Johnson and/or the Johnson Entities so as to conceal them beyond the reach of his creditors.

<u>COUNT II</u>
<u>ACTION TO DENY DEBTOR'S DISCHARGE UNDER § 727(a)(2)(A) REMOVING OR CONCEALING PROPERTY WHICH OTHERWISE WOULD HAVE BEEN AVAILABLE TO PAY DEBTS</u>

77.     Edgefield re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 76 above as if the same were fully set forth herein.

78.     Within one year before the petition was filed in this case, Debtor, with intent to hinder, delay or defraud a creditor removed, destroyed or concealed or permitted the transfer, removal, destruction or concealment of his property, property which otherwise would have been available to pay the Judgment. 11 U.S.C. § 727(a)(2)(A).

79.      Defendant has dissipated his assets within one year of filing his bankruptcy case through some or all of the Transfers.

80.     The Transfers operated to conceal Debtor's interest in various properties, and Debtor's concealment of his interests in property continued into the one-year period preceding the filing of his bankruptcy case.

81.     Debtor concealed his receipt of and/or interest in income or income-producing assets both during the one-year period preceding the filing of his bankruptcy case and after the

filing of his bankruptcy case, and he has failed to provide records showing the disposition of these funds.

82.    These funds would have otherwise been available to pay the Judgment.

83.    Debtor intentionally concealed funds by operating in cash and depositing his funds in the bank account of his son, Tomer Sonsino, to avoid payment of the Judgment.

84.    Debtor made the above transfers with the intent to hinder, defraud and delay his creditors, and to conceal same from his creditors.

85.    Debtor did not receive any consideration or received less than reasonably equivalent value for the above-described transfers.

86.    Debtor concealed and secretly retained a beneficial interest in the transferred property and proceeds thereof and same continued into the one-year period before the Petition Date.

87.    Accordingly, Debtor is not entitled to a discharge because he, with intent to hinder, delay or defraud a creditor removed, destroyed or concealed or permitted the transfer, removal, destruction or concealment of his property and/or property of the Debtor's estate, property which otherwise would have been available to pay the Judgment in the year before the Petition Date, in violation of 11 U.S.C. § 727(a)(2)(A) and (B), so as to make his Guaranty of the Note worthless.

88.    Debtor is not entitled to a discharge because he, with intent to hinder, delay or defraud a creditor removed, destroyed or concealed or permitted the transfer, removal, destruction or concealment of his property and/or property of the Debtor's estate property, which otherwise would have been available to pay the Judgment, after the filing of this bankruptcy case as shown in the Transfers described above, in violation of 11 U.S.C. § 727(a)(2)(B), so as to make his Guaranty of the Note worthless.

## COUNT III
## ACTION TO DENY DEBTOR'S DISCHARGE UNDER § 727(a)(3)
## FOR FAILURE TO KEEP OR PRESERVE RECORDS

89.     Edgefield re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 88 above as if the same were fully set forth herein.

90.     At Debtor's 2004 Examination, Debtor admitted that he failed to keep or preserve books and records from which his financial condition might be ascertained in violation of 11 U.S.C. § 727(a)(3).

91.     Debtor admitted that he failed to maintain any records whatsoever of his business dealings prior to bankruptcy.

92.     Debtor intentionally operated in cash without preserving records in order to prevent Plaintiff from garnishing his funds.

93.     Debtor intentionally concealed these funds to avoid payment of the Judgment.

94.     Such failure to keep or preserve books and records was not justified under the circumstances of this case.

95.     Accordingly, Debtor is not entitled to a discharge because, without justification, he failed to keep or preserve books and records from which his financial condition might be ascertained in violation of 11 U.S.C. § 727(a)(3).

## COUNT IV
## ACTION TO DENY DEBTOR'S DISCHARGE
## FOR FALSE OATHS UNDER § 727(a)(4)

96.     Edgefield re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 95 above as if the same were fully set forth herein.

97.     Debtor knowingly and fraudulently made false oaths in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4).

13

98.     Debtor failed to disclose the Transfers in his Bankruptcy Schedules.

99.     Debtor's Schedules misrepresent his past income and omit the Giron Note Payments and Giron Discounted Payoff.

100.    Debtor's false oaths and accounts were and are intentional and material.

101.    Debtor made these false statements under penalty of perjury.

102.    Debtor made these numerous false oaths and accounts with reckless disregard for the truth concerning material matters in this bankruptcy case and to subvert this Court and bankruptcy law.

103.    Debtor knew or should have known that these statements made in his Petition were false.

104.    Accordingly, Debtor is not entitled to a discharge because he made false oaths in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4).

<u>COUNT V</u>
<u>ACTION TO DENY DEBTOR'S DISCHARGE UNDER § 727(a)(5)</u>
<u>FOR FAILURE TO EXPLAIN LOSS OF ASSETS TO PAY DEBTS</u>

105.    Edgefield re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 104 above as if the same were fully set forth herein.

106.    As was shown above, Debtor failed to explain satisfactorily a loss of assets to meet liabilities, including by dissipating numerous assets, and operating in cash by withdrawing $5,000.00 in cash at a time when Plaintiff was attempting to garnish Debtor's accounts, in violation of 11 U.S.C. § 727(a)(5).

107.    Accordingly, Debtor is not entitled to a discharge because he failed to explain satisfactorily a loss of assets to meet liabilities in violation of 11 U.S.C. § 727(a)(5).

<u>COUNT VI</u>
<u>RESERVATION OF RIGHTS</u>

108.    Edgefield re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 107 above, as if the same were fully set forth herein.

109.    Edgefield reserves the right to pursue any and all claims against Debtor and her coconspirators and transferees as allowed by state law and bankruptcy law. Edgefield further reserves its right to amend this Complaint to assert other bases for objection to discharge of Debtor or for determination of non-dischargeability of debt.

WHEREFORE, Edgefield prays that this Court:

b.    As to Count I, enter judgment a non-dischargeable judgment in favor of Plaintiff and against Debtor on the Note and Guaranty in the amount of $375,092.44 in principal, $20,128.18 in attorney fees and $248,884.11 in post-judgment interest as of July 1, 2022 plus post-judgment interest accruing thereafter at the legal rate., together with attorneys' fees and other charges or such other amounts to be shown at trial;

c.    As to Count II, enter judgment determining that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(2)(A);

d.    As to Count III, enter judgment determining that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(3);

e.    As to Count IV; enter judgment determining that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(4);

f.    As to Count V, enter judgment determining that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(5);

g.    Enter judgment against the Debtor for punitive and exemplary damages, as well as attorney's fees and other charges or such other amounts to be shown at trial;

h.    Enter judgment awarding Plaintiff all of its expenses of litigation, including reasonable attorneys' fees; and

i.    Grant such other and further relief as this Court deems just and proper.

This 5th day of July, 2022.

ROGERS LAW OFFICES

*/s/ Beth E. Rogers*
Beth E. Rogers, Georgia Bar No. 612092
James F. F. Carroll, Georgia Bar No. 940350
9040 Roswell Road, Suite 205
Atlanta, GA 30350
770-685-6320 phone
678-990-9959 fax
brogers@berlawoffice.com
*Attorneys for Edgefield*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| VICTOR SONSINO, | ) | Case No. 21-54258-lrc |
| | ) | |
| Debtor. | ) | |
| | ) | |
| EDGEFIELD HOLDINGS, LLC | ) | Adversary Proceeding Number: |
| | ) | |
| Plaintiff, | ) | _____ |
| | ) | |
| v. | ) | |
| | ) | |
| VICTOR SONSINO, | ) | |
| | ) | |
| Defendant. | ) | |

CERTIFICATE OF SERVICE

    This is to certify that on this date I served the within and foregoing Complaint Objecting
to Discharge via first-class mail, postage prepaid, upon:

Victor Sonsino
1465 Wembley Ct
Atlanta, GA 30329

**Kennon Peebles, Jr.**
Law Office of Kennon Peebles,
Jr.
3296 Summit Ridge Pkwy
Suite 1720
Duluth, GA 30096
*Attorney for Debtor*

**Cathy L. Scarver**
P. O. Box 672587
Marietta, GA 30006

17

*Chapter 7 Trustee*

**Office of the United States Trustee**
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303
*U.S. Trustee*

This 5th day of July, 2022.

*/s/ Beth E. Rogers*
Beth E. Rogers, Georgia Bar No. 612092

Exhibit A

Exhibit B

ASSIGNMENT OF JUDGMENTS AND LOAN DOCUMENTS

("**Assignor**"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby assigns, transfers, sets over and conveys to Edgefield Holdings, LLC, a Delaware limited liability company ("**Assignee**"), all of Assignor's right, title and interest in and to (a) the judgments described on **Exhibit A** attached hereto (collectively, the "**Judgments**") and all related documents and rights Assignor has in the Judgments, as the same may have been assigned, amended, supplemented, restated or modified and (b) the Loan Documents (as defined in the Purchase Agreement (as defined below)), as the same may have been assigned, amended, supplemented, restated or modified.

**TO HAVE AND TO HOLD** the same unto Assignee and its successors and assigns forever.

It is the intention of the parties herein that by virtue of this Assignment, Assignee will become the owner of the Judgments and all of Assignor's rights, title and interest incident thereto.

Assignor hereby nominates and appoints Assignee as its attorney-in-fact, which shall be construed as being coupled with an interest, with respect to the assignment or recording of any Judgment or Loan Documents, which shall include the right to act in Assignor's and its affiliates' names, places and steads to execute, deliver and record any instrument of assignment, recording, perfection, protection, amendment, renewal, extension, application and any other documents which Purchaser, in its sole and exclusive judgment and discretion, deems necessary or desirable to assign, preserve, register and/or record its rights in and to the Judgments and Loan Documents.

This Assignment is made without recourse or representation or warranty, express, implied or by operation of law, of any kind and nature whatsoever, except as set forth in that Purchase Agreement dated as of _August 6, 2018 between Assignor and Assignee (the "**Purchase Agreement**").

[Signature on following page]


EXHIBIT
A

Dated this ___6th___ day of _August_, 2018.

REGIONS BANK, an Alabama banking corporation

By: _____

Name:  Debbie Upchurch

Its:     Vice President

STATE OF ALABAMA )

COUNTY OF ~~JEFFERSON~~ _Talladega_ ) ss:
)

Before me, _Kyle Tatum_ in and for said County and State, on this _6th_ day of
_August_, 2018_, personally appeared _Debbie Upchurch_, to me known
to be the identical person who subscribed the name of the Assignor to the foregoing instrument
as its _Vice President_ and acknowledged before me that he executed the same as
his free and voluntary act and deed, and as the free and voluntary act and deed of _Regions Bank_,
for the uses and purposes therein set forth.

_____
Notary Public

Exhibit A

| | | |
|---|---|---|
| Royal Crown Properties | $430,220.62 | 12/5/2011 |

Fulton County Superior Court
***EFILED***QW
Date: 9/4/2019 4:16 PM
Cathelene Robinson, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

Exhibit B

EDGEFIELD HOLDINGS, LLC,      )
Plaintiff,                      )
                                  )
vs.                                )      CIVIL ACTION FILE
                                  )      NO. 2011cv197383
ROYAL CROWN PROPERTIES, LLC   )
VICTOR SONSINO and           )
EHUD GOLDSTEIN                )
Defendant                     )

## <u>EXPEDITED MOTION FOR ALIAS WRIT OF FIERI FACIAS</u>

COMES NOW Edgefield Holdings, LLC ("Edgefield"), and respectfully moves the Court

pursuant to O.C.G.A. § 9-13-8 to issue an alias Writ of Fieri Facias in the above-captioned case.

In support of Edgefield's Motion, Edgefield shows the Court as follows:

1.      Edgefield, assignee of Regions Bank received a judgment against Defendant on

November 22, 2011in the above-captioned case ( the "Judgment").  A true and correct copy of

the Bill of Sale assigning the Judgment from Regions Bank to Edgefield is attached to the

Affidavit of Counsel as **Exhibit A**.

2.      The original execution issued in the above stated case was recorded on the

General Execution Docket of Fulton County, Georgia, Lien Book 2195, Page 585 on December

6, 2011 (the "Original Fi. Fa.").  A true and correct copy of the Original Fi. Fa. is attached as

**Exhibit B** to the Affidavit of Counsel.

3.      An Alias Fi Fa was recorded on the General Execution Docket of Fulton County,

Georgia at Lien Book 4300, Page 618 on December 4, 2018.  A true and correct copy of the

Alias Fi Fa is attached as **Exhibit C** to the Affidavit of Counsel.

4.      The original execution of the Writ of Fieri Facias has been mislaid or lost.

5.      The original Writ of Fieri Facias has never been satisfied.

6.      Edgefield requires an original Alias Writ of Fieri Facias in order to renew same before it lapses and file it on Gwinnett County's General Execution Docket and such other counties and states Edgefield deems necessary or appropriate.

7.      O.C.G.A. § 9-13-8(a) provides:

When an execution which was regularly issued from a court is lost or destroyed, the judge or justice of the court from which the same was issued may at any time, upon proper application and proof of the facts by the affidavit of the applicant, his agent, or his attorney or by any other satisfactory proof, grant an order for the issuing of an alias execution in lieu of the lost original execution. The alias execution shall have all the legal force and effect of the lost or destroyed original execution.

O.C.G.A. § 9-13-8(a)

Wherefore, Edgefield respectfully requests that this Court enter an Order directing the Clerk to issue an Alias Writ of Fieri Facias pursuant to O.C.G.A. § 9-13-8.

Respectfully submitted this 4th day of September 2019.


**ROGERS LAW OFFICES**


By: */s/ Beth E. Rogers*
Beth E. Rogers, Georgia Bar No. 612092
James F. F. Carroll, Georgia Bar No. 940350
100 Peachtree St., Suite 1950
Atlanta, Georgia 30303
Phone: 770-685-6320;
 Fax:  678-990-9959
brogers@berlawoffice.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this date served the following parties and counsel in the foregoing matter, with a copy of the within and foregoing **Motion for Alias Fi Fa and Affidavit of Counsel and Proposed Order** by sending same via U.S. Mail, sufficient postage attached, to the following:

ROYAL CROWN PROPERTIES, LLC
EHUD GOLDSTEIN
310 Fairleaf Court
Alpharetta, GA 30022

VICTOR SONSINO
5092 N. Peachtree Road
Atlanta, GA 30338

Dated: September 4, 2019.

<u>/s/ Beth E. Rogers</u>
Beth E. Rogers
Georgia Bar No. 612092

Exhibit C

## IN THE STATE COURT OF DEKALB COUNTY
### STATE OF GEORGIA

Plaintiff:
EDGEFIELD HOLDINGS, LLC, assignee
of Regions Bank
c/o Beth E. Rogers
100 Peachtree Street, Suite 1950
Atlanta, Georgia 30303
brogers@berlawoffice.com
770-685-6320
Georgia Bar No. 612092

v.

Defendant:

**VICTOR SONSINO**
**5092 N. PEACHTREE ROAD**
**ATLANTA, GEORGIA 30338**

Garnishee:

**MARIO E. GIRON**
**4036 LAWRENCEVILLE HWY**
**TUCKER, GA 30084**

CIVIL ACTION FILE
NO. 19SG02141

**STATE COURT OF DEKALB
COUNTY, GEORGIA
556 NORTH MCDONOUGH STREET
DECATUR, GA 30030**
**404-371-2261**

### AFFIDAVIT OF GARNISHMENT

Personally appeared James F. F. Carroll, Esq. who on oath says:

1. I am the **Attorney at Law for Plaintiff**.
2. Regions Bank obtained a judgment against the Defendant in Case Number 2011CV2011, in the SUPERIOR Court of FULTON County, Georgia ("Judgment") and no agreement requires forbearance from the garnishment which is applied for currently. A copy of the Default Judgment and the Assignment of Judgment and Loan Documents is attached hereto as **Exhibit A**.
3. $430,220.62, is the balance due, which consists of the sum of $375,092.44 Principal, $55,128.18 in attorneys' fees, and court costs ([exclusive of the cost of this action.])
4. Upon Affiant's personal knowledge or belief, the sum stated herein is unpaid.
5. The Affiant believes that the Garnishee is an employer of the Defendant.

This 20 day of November ____, 20 0 .
_____
Affiant, James F. F. Carroll, Georgia Bar No. 940350
Sworn to and subscribed before me this _____ 20th _____ day
of November ____, 20 19 .
_____
Notary Public



IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE

NOV 22 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

REGIONS BANK, )
)
    Plaintiff, )
)
vs. )          CIVIL ACTION
)          FILE NO. 2011-CV-197383
ROYAL CROWN PROPERTIES, LLC, )
VICTOR SONSINO, AND EHUD )
GOLDSTEIN, )
)
    Defendants. )
)

---

### DEFAULT JUDGMENT

---

Plaintiff Regions Bank ("Plaintiff"), having filed its Complaint against Defendant Victor Sonsino ("Defendant"), on March 4, 2011, and Defendant having been duly and legally served with process on March 18, 2011, the Sheriff's Entry of Service having been filed on August 30, 2011, and Defendant having failed to file any defensive pleading within the time provided by law, the Court finds that Defendant is in default, that there is no just reason for delay, and that Plaintiff is entitled to judgment.

Therefore, it is hereby ORDERED, ADJUDGED AND DECREED that a JUDGMENT is entered in favor of Plaintiff and against Defendant in the total amount of $430,220.62, which represents $375,092.44 in principal and accrued interest as of the date of judgment under Count II and $55,128.18 in contractual attorneys' fees under Count IV. The Clerk is directed to issue a writ of fieri facias on this judgment.

354902 v1

**EXHIBIT A**

So ordered this 22ND day of November, 2011.

Judge Henry M. Newkirk,
Atlanta Judicial Circuit

Prepared and presented on this 17th day of November, 2011 by:

s/ John Michael Kearns
John Michael Kearns
Georgia Bar No. 142438
Burr & Forman LLP
171 Seventeenth Street, N.W.,
Suite 1100
Atlanta, Georgia  30363
(404) 815-3000
Attorney for Plaintiff
Regions Bank

354902 v1                                    2

Exhibit B

ASSIGNMENT OF JUDGMENTS AND LOAN DOCUMENTS

("**Assignor**"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby assigns, transfers, sets over and conveys to Edgefield Holdings, LLC, a Delaware limited liability company ("**Assignee**"), all of Assignor's right, title and interest in and to (a) the judgments described on **Exhibit A** attached hereto (collectively, the "**Judgments**") and all related documents and rights Assignor has in the Judgments, as the same may have been assigned, amended, supplemented, restated or modified and (b) the Loan Documents (as defined in the Purchase Agreement (as defined below)), as the same may have been assigned, amended, supplemented, restated or modified.

**TO HAVE AND TO HOLD** the same unto Assignee and its successors and assigns forever.

It is the intention of the parties herein that by virtue of this Assignment, Assignee will become the owner of the Judgments and all of Assignor's rights, title and interest incident thereto.

Assignor hereby nominates and appoints Assignee as its attorney-in-fact, which shall be construed as being coupled with an interest, with respect to the assignment or recording of any Judgment or Loan Documents, which shall include the right to act in Assignor's and its affiliates' names, places and steads to execute, deliver and record any instrument of assignment, recording, perfection, protection, amendment, renewal, extension, application and any other documents which Purchaser, in its sole and exclusive judgment and discretion, deems necessary or desirable to assign, preserve, register and/or record its rights in and to the Judgments and Loan Documents.

This Assignment is made without recourse or representation or warranty, express, implied or by operation of law, of any kind and nature whatsoever, except as set forth in that Purchase Agreement dated as of _August 6, 2018 between Assignor and Assignee (the "**Purchase Agreement**").

[Signature on following page]

Dated this __6th__ day of _August_, 2018.

REGIONS BANK, an Alabama banking corporation

By: _____

Name: Debbie Upchurch

Its:    Vice President

STATE OF ALABAMA          )
                                              ) ss:
COUNTY OF ~~JEFFERSON~~ _Talladega_     )

Before me, _Kyle Tatum_ in and for said County and State, on this **6ᵗʰ** day of _August_, 2018_, personally appeared _Debbie Upchurch_, to me known to be the identical person who subscribed the name of the Assignor to the foregoing instrument as its _Vice President_ and acknowledged before me that he executed the same as his free and voluntary act and deed, and as the free and voluntary act and deed of _Regions Bank_, for the uses and purposes therein set forth.

_____
Notary Public

Exhibit A

| Judgment Debtor | Judgment Amount | Date of Judment |
|---|---|---|

Exhibit A



| Royal Crown Properties | $430,220.62 | 12/5/2011 |

2019175079  DEED BOOK 27972 Pg 55
**Filed and Recorded: 12/6/2019 3:59:00 PM**
**Recording Fee: $12.00**
**Real Estate Transfer Tax: $50.00**
**Prepared By:**
**8275172789**

Exhibit D

Return to:
John R. Grimes, Esq.
Lefkoff, Duncan, Grimes, McSwain & Hass, P.C.
3520 Piedmont Road, N.E., Suite 200
Atlanta, GA  30305

TPIN: 15 181 05 018

*The preparer of this deed renders no Opinion of Title or Title Certification.*

QUITCLAIM DEED

THIS DEED, made this *19* day of September, 2019 between Victor Sonsino and
S & A Holding, Inc., as their respective may appear in the property described hereunder
("Grantor") and Zion Tashkent ("Grantee") (the terms Grantor and Grantee to include
their respective heirs, successors and assigns where the context hereof requires or
permits),

WITNESSETH THAT: Grantor, for and in consideration of $50,00.00 and other
good and valuable consideration, in hand paid at and before the sealing and delivery of
these presents, the receipt, adequacy and sufficiency of which being hereby
acknowledged by Grantor, has bargained, sold and conveyed, and by these presents does
hereby bargain, sell, remise, release, and forever quitclaim unto Grantee all the right, title,
interest, claim or demand which the said Grantor has, or may have had, in and to the
following described property, towit:

All that tract or parcel of land lying and being in Land Lot 181 of the 15th
District of DeKalb County, Georgia, and being more particularly described
as follows:  Beginning at a point on the south side of Memorial Drive,
S.E., 450 feet east of Third Avenue, as measured along the south side of
Memorial Drive and running thence east 140 feet to within 341.9 feet to
the southwest corner of Memorial Drive and Carter Avenue; thence in a
southeast direction 172.5 feet to a point 15 feet west from the center of the
old Georgia Power Company street car tracks; thence east 15 feet to the
center of said tracks; thence southeasterly along the center of said tracks a
distance of 80 feet to an iron pin; thence west 181.5 feet along the north
line of the property now or formerly belonging to R. E. Lee Field, to a
point on the east line of the property of Brannon, which point is 220 feet
from the south side of Memorial Drive; thence running north 20 feet to the
northeast corner of the property of Brannon; thence running west along the
north line of the Brannon property 50 feet to a point 450 feet from Third
Avenue; thence running north 200 feet to the point of beginning, as per
plat of survey by J. A. Page, C. E., dated January 28, 1957.

TOGETHER with all rights, members and appurtenances to the said described
premises in anywise appertaining or belonging.

TO HAVE AND TO HOLD the said described premises unto the said Grantee, so
that neither the said Grantor, nor any other person or persons claiming under Grantor
shall at any time, claim or demand any right, title or interest to the aforesaid described

2019175079  DEED BOOK 27972 Pg 56
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

premises or its appurtenances.

IN WITNESS WHEREOF, Grantor has signed and sealed this Deed the day and year first above written.

Signed, sealed and delivered in
the presence of the undersigned:

S & A Holding, Inc.

_____ (SEAL)
Unofficial Witness

By: _____

Name: Victor Jiovino
Title: CEO

_____
Notary Public

Signed, sealed and delivered in
the presence of the undersigned:

_____ (SEAL)
Unofficial Witness

By: _____

Name: Zion Toshkent
Title: President

_____
Notary Public

2021075212 DEED BOOK 29312 Pg 347
Filed and Recorded: 4/27/2021 2:39:00 PM
Recording Fee: $25.00
Prepared By:
4582573621
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

**RETURN DOCUMENTS TO:**
HARRY S. KUNIANSKY, P.C.
600 VIRGINIA AVENUE
ATLANTA, GA 30306

18 - 096 - 25 - 003

Exhibit E

## QUIT-CLAIM DEED

IN THE STATE OF GEORGIA
FULTON COUNTY

THIS INDENTURE, made as of this 21 day of April, in the year of our Lord Two Thousand Twenty-One, between

VICTOR SONSINO

an Israeli resident, as party of the first part, and

ATLANTA LEGACY HOLDINGS, LLC

a Georgia limited liability company, as party of the second part,

WITNESSETH: That the said party of the first part, for other valuable consideration and the sum of $10.00, has bargained, sold, and by these presents does bargain, sell, remise, convey and forever QUIT-CLAIM to the said party of the second part, its successors and assigns, the following described property, to-wit:

All that tract or parcel of land lying and being in land lot 96 of the 18th District of DeKalb County, Georgia, as more particularly described in the warranty deed recorded in Deed Book 9586, Page 389, in the records of the Clerk of Superior Court, DeKalb County, Georgia.

TO HAVE AND TO HOLD the said described premises to the said party of the second part, so that neither the said party of the first part nor his heirs, successors, assigns, nor any other person or persons claiming under him shall at any time, by any means or ways, claim or demand any right or title to the aforesaid described premises or appurtenances, or any rights thereof.

IN WITNESS WHEREOF, the said party of the first part has hereunto set his hand and seal, the day and year above written.

Signed, sealed and delivered
this 20th day of April, 2021
in the presence of:

_____
Unofficial Witness

_____
Notary Public

_____ (SEAL)
Victor Sonsino